UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TERRI VELLENOWETH, et al.,

    Plaintiffs,

    v.

CITY OF NAPA, et al.,

    Defendants.

Case No. 22-cv-05779-RS

**ORDER GRANTING MOTION TO DISMISS**

## I. INTRODUCTION

Plaintiffs, parents of a man shot to death by City of Napa police, brought suit raising seven claims for relief under 42 U.S.C. § 1983 and various state causes of action. Defendants (City of Napa and individual officers) move to dismiss, arguing Plaintiffs either lack standing to assert claims on the decedent's behalf, or fail to allege sufficient facts in the Complaint to sustain their claims. Plaintiffs untimely filed an opposition to the motion.

Defendants' motion to dismiss is suitable for disposition without oral argument, pursuant to Civil Local Rule 7-1(b); the hearing set for January 5, 2023 is therefore vacated. For the reasons articulated below, the motion to dismiss—relating to Plaintiffs' first, second, fifth, and seventh claims for relief—is granted, with leave to amend.

## II. BACKGROUND[1]

Plaintiffs Terri Vellenoweth and Gary Vellenoweth were parents to Jeremy James Vellenoweth ("decedent"), all residents of Napa County. On October 6, 2021, Plaintiffs found their son standing in the driveway of his own home, holding a shotgun and standing next to a "wrecked" truck, Complaint ¶ 19, appearing to be agitated and under the influence of alcohol. Plaintiffs allege he was in a heightened state of paranoia and psychosis from withdrawal from his medication for anxiety, depression, and PTSD. Plaintiffs telephoned the police for assistance in disarming their son. However, things escalated quickly after the officers arrived. There was a shotgun blast, and the police—including officer Dominic Deguillo—set up across the street. Within a matter of seconds, despite Plaintiffs' yelling not to shoot, Deguillo and "perhaps other officers" began firing. Complaint ¶ 28. Plaintiffs allege Deguillo began firing within three seconds of arriving on the scene, even though the deceased said nothing to the police nor made any eye contact, and the officers gave no warning or genuine attempt at de-escalation (Plaintiffs allege Deguillo yelled "put the gun down" once but then immediately began shooting thereafter). The deceased was shot, collapsed, and died 20 days later, on October 26, 2021, after "agonizing pain," including four surgeries and the need for a ventilator to breathe. Complaint ¶ 36.

Plaintiffs bring seven causes of action, including unreasonable seizure; municipal liability for an unconstitutional custom, practice, or policy; and a violation of substantive due process, all under 42 U.S.C. § 1983; wrongful death; negligent selection and training; bystander liability; and survivorship.

## III. LEGAL STANDARD

Rule 12(b)(6) governs motions to dismiss for failure to state a claim. A complaint must contain a short and plain statement of the claim showing the pleader is entitled to relief. Fed. R. Civ. P. 8(a). While "detailed factual allegations" are not required, a complaint must have sufficient

---

[1] The factual background is based on the well-pled allegations in the complaint, which we take as true for the purposes of this motion.

ORDER GRANTING MOTION TO DISMISS
CASE NO. 22-cv-05779-RS

2

factual allegations to "state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570, (2007)), and plaintiffs are asked for "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

A Rule 12(b)(6) motion tests the legal sufficiency of the claims alleged in the complaint. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Thus, dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged" under a cognizable legal theory. *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013). When evaluating such a motion, courts generally "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Indeed, courts are "not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *World Health & Educ. Found. v. Carolina Cas. Ins. Co.*, 612 F. Supp. 2d 1089, 1093 (N.D. Cal. 2009).

## IV. DISCUSSION

### A. Plaintiffs' Untimely Filing

Defendants argue that Plaintiffs' failure to file an opposition within the required timeframe amounted to an apparent concession of Defendants' arguments, further supporting the motion to dismiss. Without seeking leave of court, Plaintiffs untimely filed their opposition on December 4, 2022, 9 days after the opposition deadline, explaining that counsel was under the "mistaken impression that the opposition was due 21 days before the hearing date." Dkt. 19-1 at 1-2. In the interests of facilitating a decision on the merits, Plaintiffs' untimely opposition brief was read and considered, notwithstanding its tardiness—but Plaintiffs are admonished to review the Civil Local Rules and keep abreast of deadlines, as any future unexplained violations will not be excused.

### B. Standing (All Claims Asserted on Decedent's Behalf)

Under California Code of Civil Procedure § 377.30, "a cause of action that survives the

death of the person entitled to commence an action or proceeding passes to the decedent's successor in interest . . . and an action may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest." Cal. Code of Civ. P. § 377.30. § 377.32 elucidates the statutory requirements for such a survival action—to wit, an executed and filed affidavit or declaration designed to establish, under pain of perjury, that the person seeking to commence the action has the requisite authority. *See* Cal. Code of Civ. P. § 377.32(a)(5) (requiring either that "[t]he affiant or declarant is the decedent's successor in interest . . . and succeeds to the decedent's interest in the action or proceeding" or "[t]he affiant or declarant is authorized to act on behalf of the decedent's successor in interest . . . with respect to the decedent's interest in the action or proceeding."); *id.* § 377.32(a)(6) ("No other person has a superior right to commence the action or proceeding or to be substituted for the decedent in the pending action or proceeding.").

Defendants correctly identify that such a declaration is missing from the Complaint, and thus Plaintiffs fail to demonstrate that no other persons have a superior right to commence the action at issue. Plaintiffs do not deny they have failed to file the requisite declarations, but cite *Frary v. Cnty. of Marin*, 81 F. Supp. 3d 811 (N.D. Cal. 2015) as support for their position that the declarations required under § 377.32 need not be a condition precedent to the filing of a lawsuit. Even in *Frary*, however, the plaintiff had filed a document seeking judicial notice of the Alameda Superior Court's naming of the plaintiff as the administrator of the decedent's estate, *Frary v. Cnty. of Marin*, 81 F. Supp. 3d 811, 821 (N.D. Cal. 2015) (referencing *Frary v. Cnty of Marin*, Case No. 12–cv–03928–MEJ, Dkt. 131-9)—and still the *Frary* Court, "in an abundance of caution," ordered the plaintiff to file a declaration in accordance with § 377.32. *Id.* at 846.

Had this been the only defect with the Complaint, ordering Plaintiffs to file a supplemental declaration might have sufficed. But in light of the other deficiencies identified and discussed below—as well as the pending investigation by the Napa County District Attorney and the Napa County Sheriff's Office. which is expected to yield results and information consequential to questions of liability and damages in this matter—this oversight serves as but one of many reasons

to grant the motion to dismiss. Plaintiffs are directed to provide proof of compliance with California Code of Civil Procedure § 377.32 in any amended complaint they may file. In the interim, the motion to dismiss is granted with respect to all claims which are asserted on the decedent's behalf (first, second, fifth, and seventh).[2]

### C. First Claim: Unreasonable Seizure Under 42 U.S.C. § 1983

Plaintiff's first claim for relief is for violation of the decedent's Fourth Amendment right to be free from unreasonable seizure brought under 42 U.S.C. § 1983. Because "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted," *Alderman v. United States*, 394 U.S. 165, 174 (1969), "the general rule is that only the person whose Fourth Amendment rights were violated can sue to vindicate those rights." *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998). In an action under § 1983, however, "the survivors of an individual killed as a result of an officer's excessive use of force may assert a Fourth Amendment claim on that individual's behalf if the relevant state's law authorizes a survival action." *Id.*

As described above, California authorizes survival actions under California Code of Civil Procedure § 377.30. Defendants correctly note that no authority enables Plaintiffs to bring a claim of relief on their own behalf as individuals, as opposed to on decedent's behalf, in the absence of any seizure or force directed against Plaintiffs themselves—something Plaintiffs appear to acknowledge. *See* Dkt. 19 at 11 ("It is not Plaintiffs' intention as successors in interest to also claim damages in their individual capacities in the First . . . claim[]"). Therefore, any claims for unreasonable seizure not asserted on the decedent's behalf are dismissed. Although amendment would not salvage this particular claim, Plaintiffs are given leave to amend (and indeed, encouraged) to clarify which of their seven claims for relief they are asserting on behalf of the

---

[2] Although Plaintiffs' opposition also includes their fourth claim for relief (wrongful death) as one where they are suing as successors in interest, the Complaint alleges it only in their individual capacities. This is yet another instance where Plaintiffs are asked to clarify and harmonize between the text of the Complaint and the actual legal theories and positions they wish to assert. Because Defendants have not asked for dismissal of that count, however, that claim remains.

decedent, and which they are asserting as individuals.

### D. Second Claim: Municipality Liability Under 42 U.S.C. 1983

Under Supreme Court precedent first established by *Monell v. Dep't of Soc. Servs. of City of New York*, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents"; instead, the claim must identify "execution of a government's policy or custom." 436 U.S. 658, 694 (1978). Plaintiffs fail to do so. The gravamen of the Complaint centers around the actions of one officer (Duguillo). There are no allegations that the city had an express municipal policy (ordinance, regulation, or otherwise) that directly authorized Duguillo's specific conduct. Instead, Plaintiffs allege that the police department had a "unwritten policy, habit, or 'shoot to kill' custom," and offer as proof the fact that all five officer-involved shootings in the city of Napa since 2015 have "resulted in death due to the CITY OF NAPA's unwritten policy, habit, or 'shoot to kill' custom." Complaint ¶ 40. Yet "unwritten policy, habit, or custom" are not magic words whose mere invocation proves a policy sufficient to sustain a § 1983 claim. For liability to attach, "the custom must be so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy,'"; liability "may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citing cases finding one or two incidents insufficient to establish a custom). Defendants correctly point out that the Complaint provides insufficient detail about those five instances to support the inference that these instances evince a city-wide or sanctioned shoot-to-kill policy, rather than sporadic incidents. Without the relevant contextual details, it is entirely plausible that the use of force in each of those instances was reasonable. Even construing the facts in the light most favorable to Plaintiffs, an inference of § 1983 municipal liability cannot flow from a single alleged violation.

Plaintiffs also rely on *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397

(1997)[3] for the proposition that a single violation can trigger municipal liability if the violation was highly predictable, but the case actually declined to find § 1983 liability on the basis of a single action, and otherwise fails to support Plaintiffs' position. In fact, the opinion counsels that "[w]here a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Id.* at 405.

Plaintiffs' remaining theories are also insufficient as pled. Caselaw indicates that "there are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989). Municipalities may be liable for inadequate training "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388. Here, Plaintiffs' inadequate training claims are similarly doomed by the Complaint's lack of detail: the mere fact of Officer Duguillo's actions—and even the allegations of the Ferry instance—are not enough. It cannot be said that the injury was the "plainly obvious consequence" of municipal action, or that Napa police's lack of training was the "moving force" behind that injury. *Bd. of Cnty. Comm'rs,* 520 U.S. at 408-09. On the basis of the Complaint, therefore, there are insufficient allegations with which to conclude that the police evinced a deliberate indifference to the constitutional rights of individuals.

Nor, finally, are the officer's actions a decision of a person with final policymaking authority, or decisions sanctioned by such persons. The Complaint gestures at an allegation of the

---

[3] Plaintiffs' brief unhelpfully omitted a pincite for its citation, which presumably is 520 U.S. at 405-06, and at 409. At the former citation, the analysis provided therein explicitly and only applies to cases where the action causing injury was directly attributable to the municipality, such as discharging an employee without a hearing or canceling a license. *Id.* Here, where the action causing injury was the excessive force used by a single, or at most, a few officers, no such direct action or authorization by the municipality is alleged. At the latter citation, the Court acknowledged the "possibility" of municipal liability for a single violation of federal rights when accompanied by a failure "to train . . . employees to handle recurring situations presenting an obvious potential for such a violation," a situation also insufficiently pled here.

city encouraging a "code of silence," including false reports, to cover up the use of unreasonable force, Complaint ¶ 55, but there are no concrete facts alleged relating to this conduct anywhere outside the one paragraph in which the conclusory allegation appears. *See also* Dkt. 19 at 11-12 (arguing that "the complaint provides copious facts" supporting liability, based on the city's "failure to reprimand or change its training policies on the use of deadly force" and citing only the five instances of use of deadly force and the circumstances of the shooting at issue). Plaintiffs must show that authorized policymakers made a deliberate choice to approve or endorse the subordinate's actions, and "mere failure to discipline . . . does not amount to ratification." *Sheehan v. City & Cty. of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014), *rev'd in part on other grounds sub nom. City & Cty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600 (2015).

### E. Fifth Claim: Negligent Training & Selection

Under California law, government tort liability depends on the existence of an authorizing statute. Cal. Gov't Code § 815 ("Except as otherwise provided by statute: A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person"); *Herd v. Cnty. of San Bernardino*, 311 F. Supp. 3d 1157, 1171 (C.D. Cal. 2018) (citing *Tolan v. State of Cal. ex rel. Dep't of Transp.*, 100 Cal. App. 3d 980, 983 (1979) and other California cases). To state a cause of action, therefore, "every fact essential to the existence of statutory liability must be pleaded with particularity, including the existence of a statutory duty." *Id.* at 1171. As Defendants point out, Plaintiffs' Complaint does not identify the statutory basis for the city's direct liability for training and selection, nor does it allege specific facts to support liability on the basis of Cal. Gov't Code § 815.2, raised only in Plaintiffs' opposition. This furnishes an alternate basis on which to dismiss this claim, which can be cured in an amended complaint.

### F. Seventh Claim: Survivorship

Although there is no such thing as a mere claim for "survivorship" as an independent action, *Est. of Swindell v. Cnty. of Sonoma*, 2015 WL 6177743, at *7 (N.D. Cal. Oct. 21, 2015), a separate claim for survivorship may be proper for damages resulting from loss or damage that the

ORDER GRANTING MOTION TO DISMISS
CASE NO. 22-cv-05779-RS

8

decedent sustained or incurred before death, provided the injury giving rise to liability occurs before the decedent's death. *Est. of Morad v. City of Long Beach*, 2017 WL 10511122, at *15 (C.D. Cal. Dec. 20, 2017). The Complaint does describe Plaintiffs' intention to seek recovery for the decedent's "pain and suffering, personal property damages, and all other related expenses, damages, and losses, including punitive damages," Complaint ¶ 90-91. Defendants offer only the argument that survivorship is not a separate cause of action, but do not explain why Plaintiffs cannot properly claim survivorship for decedent's suffering or property damage. As pled, however, it is unclear to what extent Plaintiffs' seventh claim for survivorship is duplicative of the survival claims they assert in their first and second claims under § 1983. *Est. of Lopez v. Gelhaus*, 149 F. Supp. 3d 1154, 1166 (N.D. Cal. 2016). Even if Plaintiffs establish standing to sue as successors in interest, this would be an alternate basis on which to dismiss the claim. Plaintiffs are encouraged to clarify in any amended complaint they may file, lest their claim be duplicative and ultimately dismissed.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' first, second, fifth, and seventh claims are dismissed, with leave to amend.

**IT IS SO ORDERED**.

Dated: January 3, 2023

_____
RICHARD SEEBORG
Chief United States District Judge